IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. EARL JANN and CAROL ISACSON,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW D. SAMPLE, J. DAVID CROSS and SAMPLE & CROSS CAPITAL MANAGEMENT LLC,<br><br>Defendants. | Civil No. 07 CV 6595<br><br>Judge Ronald Guzman<br><br>Magistrate Judge Nolan |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL**

Defendants Matthew D. Sample ("Sample"), J. David Cross ("Cross"), and Sample & Cross Capital Management, LLC ("Sample & Cross Management") (collectively "defendants"), by their attorneys, Vedder Price P.C., pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure, file this Memorandum in Support of their Motion to compel plaintiffs Earl Jann and Carol Isacson to produce their federal and state income tax returns from 1998 to the present in response to plaintiffs' Request for Production. Defendants require these income tax returns because a key issue in the case is whether plaintiffs could justifiably rely on alleged oral representations that defendants "guaranteed" that plaintiffs could not lose more than 5% of their investment in a fund that traded exclusively in index options in the face of extensive written disclosures of the risks inherent in this type of trading. The sophistication of the investor is very material to the defense and the income tax returns provide important evidence on that issue because they would contain summaries of plaintiffs' history of trading securities and other financial experience.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Jann and Carol Isacson ("Isacson") (collectively "plaintiffs") filed a Complaint alleging, *inter alia*, common law fraud based upon alleged fraudulent oral misrepresentations arising out of their investments the Vega Fund, LLC, a hedge fund managed by Sample & Cross Management. In or about May 2008, plaintiffs filed an Amended Complaint, adding a count under the Illinois Securities Law 815 ILCS 5/1 et seq. (2008). Defendants bring this motion due to plaintiffs' long standing and continued refusal to comply with defendants' document requests.

### A. Movants' Efforts to Resolve the Dispute

On February 13, 2008, defendants served its Requests for Production of Documents in this case upon Jann. Request No. 14 sought: [e]ach plaintiffs federal and state income tax returns for the years commencing January 1, 1998 to date. (*See* Exh. A attached hereto.) Plaintiffs objected to this Request on March 24, 2008. (*See* Exh. B ) On April 7, 2008, counsel for defendants wrote to Jann's counsel concerning the failure to produce these tax returns. (*See* Exh. C.) No response was received.

On April 28, 2008, counsel for defendants again wrote to Jann's counsel concerning the failure to produce the returns. (*See* Exh. D.) In an attempt to resolve this issue, among others, counsel for both parties, including Mitchell Katten and Nancy Temple for plaintiffs and David Bennett and Rebecca Ptaszynski for defendants, also met on May 7, 2008 at the offices of defendants' counsel to confer regarding discovery deficiencies and disagreements. This meeting left the instant issue unresolved. Accordingly, on June 13, 2008, counsel for defendants wrote to Jann's counsel requesting a formal discovery conference, specifically to discuss Jann's refusal to produce federal and state tax returns. (*See* Exh. E.) Pursuant to the June 13, 2008 correspondence, Jann's counsel agreed to have a telephone conference to discuss various discovery issues. This conference occurred on July 10, 2008, between plaintiffs' counsel,

Mitchell Katten and defendants' counsel Rebecca Ptaszynski, in a last ditch effort to resolve the issue, but plaintiffs again refused. On July 25, 2008, defendants' counsel sent case authority to plaintiffs' counsel (See Exh. F.), but plaintiffs persist in their refusal to produce their income tax returns.

## II.     ARGUMENT

### A.     Material Relevant to the Defense Should Be Produced

Federal Rule of Civil Procedure 26 ("Rule 26") allows parties to obtain discovery "regarding any matter, not privileged, which is relevant to the claim or defense of any party." *Washington v. City of Springfield*, No. 07-3075, 2008 WL 2074096, at *1 (C.D. Ill. May 14, 2008). Rule 26 gives the courts broad discretion in matters concerning discovery, and parties are entitled to discovery that is "germane to a specific claim or defense asserted in the pleading." *U.S. v. Seaga Corp. of Illinois*, No. 00 C 50389, 2002 WL 31045388, at *1 (N.D. Ill. Sept. 11, 2002).

Only where a party fails to demonstrate that its discovery requests are reasonably calculated to lead to the discovery of relevant and admissible evidence should a court deny a motion to compel. *See Bonutti v. Lehman Bros., Inc.*, No. 05 C 4409, 2005 WL 2848441, at *3 (N.D. Ill. Oct. 27, 2005) (denying motion to compel where movant failed to demonstrate that certain of its discovery requests were reasonably calculated to lead to the discovery of admissible evidence).

### B.     The Documents Requested by Defendants Are Relevant

Plaintiffs allege fraud both under the Illinois Securities Law as well as the common law. Plaintiffs assert that defendants made oral misrepresentations upon which they relied in investing in the Fund by guaranteeing that plaintiffs could not lose more than 5% of their investment in the Fund that invested exclusively in stock index options. Defendants deny making any such

representations.  Plaintiffs make these allegations even though they admit that they received a Confidential Offering Memorandum that contained extensive risk disclosures including that (1) the Fund intended to trade in index options; (2) that trading in index options was very risky; and (3) that the investors could lose all of their money because index options could expire worthless.

The following are certain of the Risk Disclosures contained in the Offering Memorandum:

> An investment in VEGA is a non-liquid investment and involves a high degree of risk.  An investment in Units should be considered only by sophisticated investors who have carefully read this Memorandum and who fully understand the risks involved.  See RISK FACTORS.  [Offering Mem., p. 6.]
>
> * * * *
>
> **ANY REPRESENTATIONS (WHETHER ORAL OR WRITTEN) OTHER THAN THOSE SET FORTH HEREIN MUST NOT BE RELIED UPON.**  [Offering Mem., p. 2; emphasis added.]
>
> * * * *
>
> The primary investment objective of VEGA is the growth through combined long/short trading of index options ("Index Options") utilizing a fundamental and technical approach.  Much of the strategy relies on writing contracts at various strike prices and selling straddles (both puts and calls) at varying percentages out of the money determined by the proprietary strategy, current market conditions and volatility, and adjusting those positions over the trading month as needed.  VEGA is intended for sophisticated investors able to bear the risk of greater volatility while seeking greater capital appreciation.  [Offering Mem., p. 7.]
>
> * * * *
>
> 4.   Risk of Loss in Investment and Trading Activities.  In its investment and trading activities, VEGA is exposed to normal market risks.  All investments in securities involve a risk of capital, and no guaranty or representation that VEGA's activities will result in profits can be made.
>
> 5.   Options and Warrants.  VEGA's investment and trading strategies may involve investments in options and/or warrants, either to hedge a position in the underlying security or as a less expensive means of taking a position in the underlying security.  Options and warrants, however, have limited exercise periods and are valueless if their strike prices remain above (in the case of puts) or below (in the case of calls) the prices of the underlying securities.  Consequently,

- 4 -

<u>as an investor in options and warrants, VEGA runs the risk of losing its entire investment, whereas, as an investor in the underlying securities, it could be in a position to hold the securities until its investment could be recouped</u>. [Offering Mem., p. 11; emphasis added.]

\* \* \* \*

16.     <u>Diversification</u>.  <u>VEGA does not intend to specify any diversity criteria; each Member must be prepared to accept the possibility that his, her or its entire investment will be lost through a concentration of only a few investments by VEGA</u>.  [Offering Mem., p. 13; emphasis added.]

\* \* \* \*

See excerpts from Confidential Offering Memorandum attached as Exh. G.

Plaintiffs, educated persons, apparently will testify that, notwithstanding these direct, focused and to the point disclosures, that they relied on the so-called "guarantee" made orally by defendants.

The request for income tax returns is reasonably calculated to lead to the discovery of relevant and admissible evidence. *Fisher v. Samuels*, No. 84 C 3385, 1986 WL 12330 (N.D. Ill. Oct. 24, 1986) is right on point (granting motion to compel production of plaintiffs' tax returns and information relating to investment history).  In *Fisher*, the defendants sought discovery of each plaintiff's federal and state income tax returns and disclosure of all investments made by plaintiffs over a period of approximately eight years.  1986 WL 12330, at *1.  The complaint in *Fisher* alleged fraudulent misrepresentations in connection with investments in a tax shelter oil and gas limited partnership.  Defendants in that case argued that a complaint that alleges securities fraud "places in issue the plaintiff's sophistication and reliance [and] the tax returns and investment information were discoverable . . . because they were sources of information relevant to the issues of investment sophistication and plaintiffs' reasonable reliance on defendants' representations."  *Id.*  The Court (Judge Ann Williams) agreed, noting that "the requested information is relevant to the issues of reliance and damages, both of which are

elements of the 10b-5 fraud claim. In addition, the material may shed light on plaintiffs' sophistication as investors." *Id.* at *2.

This Court consistently has ordered production of income tax returns in proper circumstances. *Saket v. American Airlines, Inc.*, No. 02 C 3453, 2003 WL 685385 (N.D. Ill. Feb. 28, 2003) (finding that in an action to set aside allegedly fraudulent transfers, plaintiff's income tax returns were relevant to the issue of the value of the plaintiff's corporate assets that were transferred, the sufficiency of consideration and the sources of payment); *U.S. v. Seaga Corp. of Illinois*, No. 00 C 50389, 2002 WL 31045388 (N.D. Ill. Sept. 11, 2002) (granting motion to compel income tax returns in a Title VII employment discrimination action where the documents sought were relevant to whether plaintiff attempted to find alternative employment to mitigate damages); *Michas v. Health Cost Controls of Illinois, Inc.*, No. 96 CV 5104, 1997 WL 467167 (N.D. Ill. Aug. 12, 1997) (compelling production of income tax returns in a discrimination claim under the ADEA where movant established that the information was relevant to the issues of whether plaintiff engaged in outside employment during his tenure without authorization, whether plaintiff actively mitigated damages and where the documents also weighed on plaintiff's credibility).

Similarly, in the instant case the tax returns are relevant to plaintiffs' sophistication as investors, which is directly relevant to the issue of reasonable reliance. That plaintiffs are not alleging a federal securities law claim is of no significance. Reasonable reliance is an essential element to both the claim for common law fraud and the claim for violations of the Illinois Securities Act. The time period is reasonable because investment sophistication builds with experience in financial matters and investing over time, and defendants seek only two (2) documents per plaintiff for each year. Accordingly, as the court did in *Fisher*, so should this

- 7 -

Court compel the plaintiffs to produce their federal and state income tax returns from 1998 to the present.

### III. THE COURT SHOULD AWARD DEFENDANTS THEIR ATTORNEYS FEES AND COSTS IN BRINGING THIS MOTION

Rule 37(5)(A) of the Federal Rules of Civil Procedure provides in pertinent part:

Payment of Expenses; Protective Orders.

(A) *If the Motion is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Payment of attorneys' fees and costs is warranted here because the income tax returns clearly are relevant to a key issue in the case, reasonable reliance on the alleged oral misrepresentations, and the case authority in this District supports disclosure of the returns. Rule 37(5) provides that if the motion is granted – or the requested disclosure is provided after the motion is filed – the court *must* impose sanctions unless at least one of three exceptions is present; *See* Rule 37(5)(A)(i)(ii)(iii). None of the circumstances that would warrant an exception are present in the instant case.

The Movants did not file the motion before attempting in good faith to obtain disclosure or discovery without court action. As the procedural history described above makes clear, defendants' counsel had several written and oral communications about this issue over a period

of months and plaintiffs' steadfastly refused to produce the tax returns. Defendants even provided plaintiffs counsel with the key authority on this issue prior to filing this motion, and plaintiffs continued to thumb their noses at defendants.

Second, the plaintiffs' nondisclosure was not substantially justified in light of the case authority in this District and the obvious relevance of the documents sought.

Finally, there are no other circumstances that make an award of expenses unjust. The documents sought are (1) clearly defined so no misunderstanding among counsel existed; (2) available without undue cost, burden or effort; and (3) obviously relevant both logically and in light of clear precedent in this District.

Plaintiffs have made very serious charges against these defendants who include two individuals who have been and continue to be severely prejudiced by the pendency of this lawsuit making very serious charges including common law fraud and violation of the Illinois Securities Act, based upon alleged oral statements unsupported by any writings, in the face of extensive written disclosures to the contrary. Justice requires that defendants be provided with the ammunition to defend themselves against these baseless charges.

## IV. CONCLUSION

Plaintiffs' refusal to produce their federal and state income tax returns are without basis. Defendants attempted in good faith to avoid seeking the Court's assistance on this matter, but through no fault of their own, were unable to reach an accord. (*See* Rule 37.1 Certification of counsel for Defendants.) Accordingly, defendants respectfully request that the Court grant their Motion to Compel, together with attorneys' fees and costs incurred in connection herewith.

- 9-

          Respectfully submitted,

          MATTHEW D. SAMPLE, J. DAVID CROSS
          AND SAMPLE & CROSS CAPITAL
          MANAGEMENT, LLC


          By:  s/ David E. Bennett
                  One of Their Attorneys

David E. Bennet, Esq.
Rebecca L. Ptaszynski, Esq.
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois  60601-1003
(312) 609-7500


Dated:  August 4, 2008

CHICAGO/#1815301.3